Michael J. McCue
Nevada Bar No. 6055
Jonathan W. Fountain
Nevada Bar No. 10351
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, Nevada 89169
Tele: (702) 949–8200
MMcCue@LRRC.com
JFountain@LRRC.com

*Attorneys for Plaintiff*
*Aker BioMarine Antarctic, AS*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

AKER BIOMARINE ANTARCTIC, AS,

Plaintiff,

v.

LUHUA BIOMARINE (SHANDONG) CO., LTD., and INIFINITI MARKETING GROUP, INC. d/b/a INFINITI NUTRACEUTICALS,

Defendants.

Civil Action No.: 2:16-cv-02314

**PLAINTIFF AKER BIOMARINE ANTARCTIC, AS'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**(*Expedited Review Requested*)**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and District of Nevada Local Rule 7-5, Plaintiff Aker BioMarine Antarctic AS ("Aker" or "Plaintiff"), respectfully moves the Court for an emergency, *ex parte* temporary restraining order and a preliminary injunction against Defendants Luhua BioMarine (Shandong) Co., Ltd ("Luhua") and Infiniti Marketing Group, Inc. d/b/a Infiniti Nutraceuticals ("Infiniti") (collectively, "Defendants") preventing them from practicing Aker's patent including marketing and selling infringing products at the SupplySide West trade show which takes place at the Mandalay Bay from October 4 – 8, 2016. As part of this requested relief Aker also seeks an order for seizure of Luhua's infringing products and other relevant evidence of its infringement before Luhua can remove evidence of its infringing activities from this jurisdiction.

This Motion is supported by the Declaration of Thomas Brenna ("Brenna Declaration"), the Declaration of Todd Norton ("Norton Declaration"), and the Declaration of Andrew Pratt



3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996
Lewis Roca ROTHGERBER CHRISTIE

("Pratt Declaration"), the exhibits attached thereto, and the following Memorandum of Points and Authorities.

**BASES FOR EMERGENCY *EX PARTE* RELIEF**

Aker, an industry-recognized leader and innovator in the production and formulation of krill oil products, seeks emergency relief on an *ex parte* basis. In a few days, a fairly recent entrant in the krill oil market, China-based Luhua and its U.S. distributer Infiniti, intend to market and offer for sale infringing krill oil products at the krill oil industry's biggest trade show of the year—the 2016 SupplySide West Trade Show ("SupplySide West") taking place from October 4-8 in Las Vegas, Nevada. *See* Norton Decl. ¶ 15. As explained in more detail below, Aker, through a great deal of time and expense, developed a premium krill oil that offers consumers more of the nutrients found in the krill. Luhua, without permission from Aker, also offers a premium krill oil. Luhua's products, however, infringe at least one of Aker's groundbreaking patents in this field. Brenna Decl. ¶ 15. There is no reasonable question as to infringement. Aker engaged a third party laboratory to analyze samples of Luhua's krill oil products and Dr. Thomas Brenna—a noted expert in the field—reviewed the testing results, compared them with the patent claims, and concluded that the products infringe Aker's patent. Defendants' attempt to offer infringing krill oil products at SupplySide West directly to Aker's clients and potential clients would irreparably harm Aker.

Luhua is no stranger to patent infringement. Approximately this time last year, this Court enjoined Luhua for infringing the patents of another competitor in the krill oil industry. While subject to the Court's temporary restraining order, Luhua distributed samples of its new krill oil product to Aker's counsel.[1] Pratt Decl. ¶ 5. Aker tested the sample and determined that Luhua's new krill oil product infringed Aker's patents. Brenna Decl. ¶ 15. Subsequently, Luhua announced it had secured a U.S. distributor—Infiniti—for its products, putting Luhua in a position for the first time to be seen as a credible supplier of krill oil by the SupplySide West trade show's attendees—Aker's current and potential customers. *See* Norton Decl. ¶.13. But

[1] The TRO obtained in October, 2015 by competitor Neptune Technologies & Bio-resources, Inc. prohibited Luhua from offering to sell or distribute its krill oil products that Neptune alleged was infringing its patents.

Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Luhua's krill oil infringes Aker's patent. Luhua cannot be allowed to usurp the competitive advantage Aker has worked hard to obtain. Defendants should be enjoined from infringing Aker's patent rights.

While an *ex parte* restraining order is not justified in every case, specific and compelling facts justify it here. There is clear evidence of patent infringement, confirmed through testing and expert analysis. There is also heightened concern that the foreign defendant will hide, destroy, or depart with evidence if they are given prior notice of the temporary restraining order. Indeed, Luhua's apparent sale of products while subject to a TRO suggests, at a minimum, that it values expediency. As a result, Aker seeks the temporary restraining order on an *ex parte* basis and, as part of the order, is seeking a seizure order that will enable Aker to review, copy and then return records of Luhua, such as sales orders, relating to the infringement, so that the evidence can be preserved and will not be irretrievably lost.

Defendants' rights will also be adequately protected. To ensure that Defendants have sufficient notice of any temporary restraining order, immediately after effecting personal service of the same at the SupplySide West trade show, Aker will promptly provide Defendants with notice through electronic mail. Aker will also send notice to Luhua by international courier to its foreign address and will send notice to Infiniti by overnight parcel immediately after effectuating personal service at SupplySide West. In addition, to ensure that Defendants have an adequate opportunity to be heard on the temporary restraining order, Aker will not oppose a request for an expedited hearing on any motion to dissolve the temporary restraining order. Finally, Aker is prepared to immediately post a $50,000 bond with the Clerk of the Court to provide security against any damages Defendants may suffer in the unlikely event that the restraining order is later found to be improper.

Finally, Aker notes that this Court has granted *ex parte* temporary restraining orders and seizure orders in similar cases and, specifically, in similar circumstances involving companies appearing at Las Vegas trade shows—including against Luhua just last year. *See, e.g., Neptune Technologies & Bioressources, Inc. v. Luhua BioMarine (Shandong), Co., LTD.*, Case No. 2:15-cv-01911 (D. Nev. Oct. 7, 2015); *SATA GmbH & Co. KG v. Wenzhou T&E Indus. Co., Ltd.*, No.

2:13-cv-02042-APG-NJK (D. Nev. Nov. 6, 2013); *Otter Prods., LLC v. Anke Indus. Group Ltd.*, 2:13-cv-00029-MMD-NJK (D. Nev. Jan. 8, 2013); *NIKE, Inc. v. QiLoo Int'l Ltd.*, 2:12-cv-00191-GMN-GWF (D. Nev. Feb. 7, 2012); *Lifetime Prods., Inc. v. Ningbo Wanxiang Plastics Prods. Co.*, 2:09-cv-00802-JCM-PAL (D. Nev. May 5, 2009); *NIKE, Inc. v. Meitac Int'l*, No. 2:06-00934-PMP-PAL (D. Nev. Aug. 1, 2006). The seizure orders in these cases authorized the plaintiff to seize the defendant's infringing products as well as evidence of the defendant's infringement by seizing, copying, and returning documents and computers obtained from the defendant at the trade show. Accordingly, Aker does not seek any relief exceeding the bounds of relief previously granted by this Court in similar circumstances.

**STATEMENT OF FACTS**

Aker is a leader and an innovator in the krill oil industry. Among other things, krill contains a number of beneficial nutrients including: omega-3 fatty acids, ether phospholipids, and astaxanthin and other antioxidants. Aker offers these nutrients to consumers through its krill oil products sold under the Superba™ brand, which includes the Superba™, Superba™2™, and Superba™Boost™ products (collectively, the "Superba Products"). Norton Decl. ¶ 3. Aker is the owner by assignment of the United States Patent No. 9,320,765 ("the '765 patent") (the "Asserted Patent"). *See* Exhibit A. The Asserted Patent discloses new krill oil compositions characterized by having high amounts of phospholipids, astaxanthin esters and/or omega-3 fatty acids. Aker's '765 patent provides Aker with a competitive advantage in the krill oil industry—enabling Aker to provide premium krill oil that contains higher levels of the above mentioned nutrients than any other krill oil on the market.

Aker has invested a substantial amount of money into its infrastructure to enable Aker to practice its intellectual property, including investing approximately 300 million dollars into its supply chain for the Superba Products. In the United States alone, since 2013, Aker has invested tens of millions of dollars related to the manufacturing of its patented Superba Products. *See* Norton Decl. ¶ 10. Aker also owns two fishing vessels, the "Saga Sea" and "Antarctic Sea," that harvest krill from the cold waters of the Southern Ocean, near Antarctica. *Id.* ¶ 4. These are highly customized fishing vessels that allow Aker to process the krill on board, preventing the

Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

rapid decay of the nutrients found within the krill—a common and difficult problem throughout the krill industry.[2] In 2013, Aker purchased its processing plant in Houston, Texas to domestically produce the Superba Products, creating jobs and infusing tens of millions of dollars into the local economy.[3] *See* Norton Decl. ¶¶ 7-10. Aker protects the above investments and its own research and development by obtaining patents on its intellectual property. *See* Norton Decl. ¶ 6. Those patents protect Aker's competitive advantage in the industry.

Since developing its revolutionary krill oil products and making substantial investments in infrastructure, Aker has brought to market an increasing amount of premium krill oil. However, Luhua is undercutting Aker's business model and competitive advantage with its infringing products.

Luhua is a Chinese company that is owned, at least in part, by the Chinese government. *See* Exhibit B. Luhua is a relatively new entrant in the krill oil industry. However, it has made significant strides during the short time in which it has participated by aggressively competing for the same customer base targeted by Aker. Along with its newfound distributer, Infiniti Nutraceuticals ("Infiniti") (a California company), Defendants import, market, and sell Luhua's infringing krill oil and krill oil capsules through the brand name ICERUBY ("Infringing Products") to the same market targeted by Aker.

The current situation with Luhua is almost identical to a case last year brought by Neptune Technologies where Judge Mahan temporarily enjoined Luhua under similar circumstances. *Neptune Technologies*, Case No. 2:15-cv-01911. In that case, Judge Mahan found that:

> an order other than an ex parte seizure order would not be adequate to achieve the purposes of 35 U.S.C. § 271 because: (a) Luhua is a China-based manufacturer of krill oil; (b) with the exception of its temporary presence in Las Vegas, Nevada, during the SupplySide West trade show from October 5 through 9, 2015, Luhua does not have any known regular place of business or assets in the United States; and (c) there is a significant risk that Luhua will remove from the jurisdiction any evidence of its infringement (including documents in paper and electronic form) if an ex parte seizure order is not granted. . . . Neptune is likely to succeed on the

[2] It is through Aker's innovation that it was able to solve the issue of rapid decay of krill nutrients, enabling Aker's krill oil to provide high levels of those sought after nutrients to consumers through its patented krill oil.

[3] The processing plant in Houston, Texas is Aker's sole manufacture of its Superba products.



Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

> merits of its patent infringement claim under 35 U.S.C. § 271. . . . Luhua has manufactured, imported into the United States, and is currently offering for sale, krill oil products that infringe the ’351 and ’675 patents at the SupplySide West trade show in Las Vegas, Nevada, which runs from October 5 through 9, 2015. Absent an ex parte temporary restraining order and a seizure order, Luhua’s manufacture, use, sales, offers to sell, and/or importation into the United States of its infringing krill oil products will result in immediate and irreparable injury to Neptune in the form of: (a) direct competition with Neptune and Neptune’s licensees; (b) lost krill oil revenue; (c) lost market share; (d) price erosion, and (e) harm to Neptune’s reputation and goodwill. Further, because Luhua has no presence in the United States, it may be difficult or impossible for Neptune to enforce a money judgment against Luhua.

*See Neptune Technologies*, Dkt. No. 8 at 2.

Here, Defendants are offering for sale and importing krill oil products that infringe claims 1, 2, 7, 9, 18, 19, 25, 26, 31, 33, 34, 42, and 43 of the ‘765 patent. *See* Brenna Decl. ¶ 15; Pratt Decl. ¶ 5. The importation and sale of the Infringing Products violates Aker’s patent rights. 35 U.S.C. § 271. Although it has minimal physical ties to the United States, Luhua appears to have targeted the United States as a new and primary market for its products. Once SupplySide West is over on Saturday, October 8, 2016, Luhua will leave the United States, presumably with orders for infringing products. Accordingly, Aker must serve Defendants with a civil action and temporary restraining order while its representatives are here in the United States, to obtain jurisdiction over Luhua, and to prevent the irreparable harm that would result should Luhua be permitted to offer its infringing products during the trade show and then leave with that evidence.

**ARGUMENT**

Just last year, Luhua was enjoined from selling its infringing products at the very same trade show at issue here. Based on the nearly-identical behavior by Luhua in this instance, Aker now seeks the same relief. But, the stakes are higher this year as Luhua recently has made additional inroads into the United States market by partnering with a U.S. nutraceutical distributer, Infiniti. Indeed, Defendants presently plan to market and sell the Infringing Products at the SupplySide West trade show and, for the first time, will be seen by attendees as a credible supplier of krill oil products. The Court should temporarily and preliminarily enjoin Defendants

Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

from marketing and selling its infringing products.[4] Further, Aker respectfully requests the Court to order the United States Marshals to seize any evidence from Luhua's booth at the SupplySide West trade show before Luhua returns from this jurisdiction (back to China) with its evidence of infringement.

## I. Preliminary Injunction Standard

Under the Patent Act, 35 U.S.C. § 283 (2013), U.S. district courts have the authority to preliminarily enjoin parties "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Courts have since held that, specifically, preliminary injunctions should be granted where (1) the movant has a reasonable likelihood of its success on the merits; (2) irreparable harm is likely to occur if an injunction was not granted; (3) a balance of hardships tips in the movant's favor; and (4) public interest favors the movant. *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006). The requirements for a preliminary injunction are the same as those to obtain a temporary restraining order ("TRO"). *See, e.g.*, *Conair Corp. v. Le Angelique, Inc.*, No. 2:14-CV-01149-RCJ, 2014 WL 4634269, at *2 (D. Nev. Sept. 15, 2014); *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) (citing *Dumas v. Gommerman*, 865 F.2d 1093, 1095 (9th Cir.1989)).

Over the years, injunctive relief has been deemed particularly appropriate for patent infringement cases. Indeed, because the principle benefit of a patent is to exclude others from the

[4] Good cause exists for issuing a temporary restraining order without prior notice to the Defendants. At past trade shows under similar circumstances, exhibitors from China have attempted to hide or depart with evidence from their booths even though the booths were secured by U.S. Marshals. *Nike, Inc. v. Fujian Bestwinn China Indus. Co.*, No. 2:16-cv-00311-APG-VCF, 2016 U.S. Dist. LEXIS 60613, at *3-4 (D. Nev. Feb. 17, 2016) (holding that, given the Defendant's status as a foreign entity, evidence of infringement "would likely be destroyed, moved, hidden, or otherwise made inaccessible to the Court if NIKE were to proceed on notice to Bestwinn"); *Hand & Nail Harmony, Inc. v. Guangzhou Cocome Cosmetics Co.*, No. 2:14-cv-01106-RFB-CWH, 2014 U.S. Dist. LEXIS 102525, at *11 (D. Nev. July 15, 2014) (finding that a foreign Defendant was "likely to conceal or hide the counterfeit goods [at issue in the case]" to avoid their scrutiny); *Otter Prods., LLC v. Anke Grp. Indus. Ltd.*, No. 2:13-cv-00029-MMD-RJJ, 2013 U.S. Dist. LEXIS 159755, at *7 (D. Nev. Jan. 8, 2013) (holding that, given the Defendant's status as a foreign entity, evidence of infringement "would likely be destroyed, moved, hidden, taken outside of the United States, or otherwise made inaccessible to OtterBox if Anke were to receive notice of OtterBox's application for a seizure order or TRO").

Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

technology, monetary damages are typically insufficient to remedy the damage done by the infringer. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm – **often irreparable** – of being forced to compete against products that incorporate and infringe its own patented inventions.") (emphasis added); *Acumed LLC v. Stryker Corp*., 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("In view of that right [to exclude], infringement may cause a patentee irreparable harm not remediable by a reasonable royalty.").

Here, as set out below, all four factors of the *Sanofi* test are satisfied. *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1368 (Fed. Cir. 2008). Thus, the Court should preliminarily enjoin and temporarily restrain Defendants from using, offering to sell, and selling its aforementioned infringing products anywhere in the United States, as well as from importing these goods into the United States.

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996
Lewis Roca ROTHGERBER CHRISTIE

## II. Aker is Likely to Succeed on the Merits

When seeking a preliminary injunction a movant must first show a reasonable likelihood of success on the merits of its case. *Abbott Labs.*, 544 F.3d at 1368. In this instance, Aker must demonstrate a reasonable likelihood that it will prove that Luhua's krill oil products infringe at least one claim of the '765 patent. Significantly, this demonstration need not definitively prove infringement, nor does it require that "there be no evidence supporting the viewpoint of the accused infringer." *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987). Indeed, all that is required under this prong is a showing by the movant that there is a "reasonable probability" that it will prevail on its patent infringement claim. *Id.* (noting that "[t]he grant of a preliminary injunction does not require that infringement be proved beyond all question, or that there be no evidence supporting the viewpoint of the accused infringer," rather, plaintiff needs to show only a "reasonable probability" of prevailing on its claim for patent infringement to warrant a preliminary injunction).

### a. Patent Infringement

Aker is likely to prove that Luhua's ICERUBY krill oil product infringes Aker's '765 patent. In determining whether patent infringement has occurred, courts use a two-step test.

First, courts interpret the meaning and scope of the relevant patent claims at issue, typically looking to claim language, specification, and prosecution history to do so. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 1000 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). Courts typically interpret these claims according to their “ordinary and customary meaning,” *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002), unless it is shown that a patentee “expressly relinquished claim scope.” *Epistar Corp. v. Int’l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). This claim construction analysis is a question of law left to the trial court. *See Markman*, 52 F.3d at 979.

Second, courts determine whether each properly construed claim from the patentee’s patent is either literally matched or substantially the same as those of the allegedly infringing product. *Markman*, 52 F.3d at 976. This analysis, unlike that of claim construction, is a question of fact. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1356 (Fed. Cir. 2007).

Here, the process of claim construction and infringement analysis is fairly straightforward because the claims at issue relate to measurable amounts of omega-3 fatty acids, ether and non-ether phospholipids, triglycerides, and astaxanthin in the krill oil. *See* Brenna Decl. ¶¶ 12, 15. If amounts of these nutrients fall within a given range for a particular product, there is infringement. As explained in the Brenna Declaration, Aker’s testing of Luhua’s product shows that the Luhua’s krill oil products infringe at least one claim of Aker’s patent. *See* Brenna Decl. ¶ 15. Moreover, Defendants are manufacturing, importing, and offering for sale the infringing products. Pratt Decl. ¶¶ 5-8. These actions violate Aker’s patent rights.

b. Patent Validity

Aker is also likely to succeed on the issue of patent validity in this matter. A patent, once issued, is presumed valid. *Abbott Labs.*, 544 F.3d at 1346; *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) (“[T]he patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation.”). The presumption makes good common sense as any issued patent is the subject of a long and detailed examination by a professional patent examiner at the United States Patent and Trademark office. As such, regardless of litigation stage, “[t]he burden of establishing invalidity of a patent or any claim

Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

thereof shall rest on the party asserting such invalidity." *Id.* Indeed, this is a heavy burden, as courts have consistently required the asserting party to show "clear and convincing evidence" of the alleged invalidity, and that this evidence "raises a substantial question" regarding the patent's validity. *Titan Tire Corp.*, 566 F.3d at 1377; *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). However, without an affirmative showing of the above, "the very existence of the patent satisfies the patentee's burden on the validity issue." *Titan Tire Corp.*, 566 F.3d at 1377 (citing *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)). Thus, unless and until Luhua is able to present clear and convincing evidence raising substantial questions about the invalidity of Aker's relevant patents, Aker need not address the validity of its patent because it is presumed valid. As such, at this stage Aker's patents are presumed valid.

### III. Aker will Suffer Irreparable Harm if Defendants' Conduct is Not Immediately Enjoined

A movant seeking a preliminary injunction also must show that it will likely be irreparably harmed in the absence of the requested injunction. *See, e.g., Titan Tire Corp.*, 566 F.3d at 1375-76. In this case, Aker is and will continue to be irreparably harmed by Defendants' conduct in the absence of injunctive relief. For the first time, because of its agreement with Infiniti, Luhua has positioned itself to directly compete with Aker by offering its infringing products to Aker's current and potential customers. Defendants are scheduled to appear at the SupplySide West trade show in Las Vegas, Nevada from October 4, 2016 through October 8, 2016—the biggest trade show for participants in the krill oil industry. At SupplySide West, upon information and belief, Luhua and Infiniti will attempt to sell their krill oil products to a number of corporate accounts, including current and prospective clients of Aker. *See* Norton Decl. ¶ 15.

Defendants' marketing of infringing krill oil products to Aker's same target market irreparably harms Aker. *Id.* ¶ 16. Aker currently trades on its reputation as the ***sole*** company able to lawfully provide or license krill oil with a certain high level of nutrients and has expended a significant amount of time and expense customizing and refining its production processes to earn this reputation. *See* Norton Decl. ¶ 16. The U.S. patent system protects Aker's innovations and

Lewis Roca ROTHGERBER CHRISTIE
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

allows it to recoup its investment by excluding others from using its patents. Defendants' sale of Luhua's infringing products at SupplySide West will not only hinder Aker from recovering its investment costs, but will erode Aker's hard-earned competitive advantage in the market, making it more difficult for Aker to convince potential customers to carry Aker's Superba products. *See* Norton Decl. ¶ 16. Moreover, any krill oil customers obtained by Defendants at the SupplySide show will likely stick with Defendants for years, and it will be extremely difficult for Aker to identify and dislodge them once the relationships are solidified. *See id.* As a result, Defendants infringing conduct at the SupplySide show will interfere with client relationships and product demand for years into the future, and will thus damage the goodwill Aker has spent years cultivating. *Id.*

## IV. The Balance of Hardships Favors Aker

A movant also must show that the "balance of hardships" tips in his or her favor. *Sanofi-Synthelabo*, 470 F.3d at 1374. In other words, the court "must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Significantly, while this prong must be considered as part of the preliminary injunction analysis, it need not always be satisfied for an injunction to be issued. *Id.* at 1457-58. Regardless, in this instance, the balance of hardships favors Aker's request for a preliminary injunction.

Aker relies almost exclusively on krill oil for its income and has made significant investment in its infrastructure and intellectual property to allow it to compete in the market. Unlike Aker and other companies in the industry, Luhua has not made this same type of investment. Instead Luhua illegally rides the coattails of innovators in the industry through its willful patent infringement. For those companies like Luhua that choose infringement over innovation, an injunction cannot cause a legitimate hardship. *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). *See also BlackBerry Ltd. v. Typo Prods. LLC,* No. 14-cv-00023-WHO,

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996
Lewis Roca ROTHGERBER CHRISTIE

2014 U.S. Dist. LEXIS 42702, at *39 (N.D. Cal. Mar. 28, 2014) (same); *A & L Tech. v. Resound Corp.*, No. C 93-00107 CW, 1995 U.S. Dist. LEXIS 22442, at *11 (N.D. Cal. Mar. 15, 1995) ("Where the hardship an injunction will cause simply mirrors the success an infringer has enjoyed by virtue of its infringing activities, the infringer is not entitled to protection.") (citing *Polaroid Corp. v. Eastman Kodak Co.*, 641 F. Supp. 828 (D. Mass. 1985), aff'd, 833 F.2d 930 (Fed. Cir. 1986)).

Moreover, if a temporary restraining order and seizure order are not granted, then Luhua will escape the jurisdiction of this Court with its evidence of infringement. It will be extremely difficult for Aker to obtain evidence associated with Luhua's infringement if Luhua is not temporarily enjoined. On the other hand, Defendants will be protected by a bond in the highly unlikely event the temporary restraining order improperly issues. Therefore, the balance decidedly tips in favor of Aker.

As for Infiniti, a temporary restraining order will not cause a legitimate hardship. Infiniti has only recently become a distributor for Luhua. Moreover, krill oil is only one of approximately 86 other products Infiniti currently sells. Infiniti will still be able to showcase its other products at the SupplySide West show. It will only be prohibited from selling Luhua's Infringing Products. Again, the balance tips in Aker's favor.

**V. Granting the Injunction serves the Public Interest**

Finally, in order to obtain a preliminary injunction a movant must show that the injunction serves the broader public interest. *Sanofi-Synthelabo*, 470 F.3d at 1374. Courts "have long acknowledged the importance of the patent system in encouraging innovation [,]" and as such recognize a strong public interest in protecting the exclusive rights they entail. *Id.* at 1383. As a result, "the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech Inc.*, 849 F.2d at 1458. However, courts have only "exercised their discretion to deny injunctive relief in order to protect [some such critical public interest]" in "rare instances" because, in addition to the fact that a denial would discourage investment into innovative technologies, it would likely also incentivize potential infringers to act. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996
Lewis Roca ROTHGERBER CHRISTIE

1538, 1547 (Fed. Cir. 1995).

Here, the public interest supports an injunction. Aker's situation is exactly the type of situation our patent system is designed to protect against. Aker has invested a substantial amount of time and money to develop and bring to market a product that benefits consumer health. The public interest favors protecting Aker and preventing Defendants from usurping the market.

**CONCLUSION**

For all the foregoing reasons, Aker respectfully requests that the Court temporarily and preliminarily enjoin Defendants from infringing Aker's intellectual property rights.

Dated: October 3, 2016

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: /s/ Michael J. McCue

Michael J. McCue
Jonathan W. Fountain
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
MMcCue@LRRC.com
JFountain@LRRC.com

Frank C. Cimino
FCCimino@venable.com
Andrew F. Pratt
AFPratt@venable.com
Christopher S. Crook
CSCrook@venable.com
VENABLE LLP
575 7th Street, NW
Washington, D.C. 20004
Telephone: (202) 344-4389
Facsimile: (202) 344-8300

*Counsel for Plaintiff Aker BioMarine LLC*