**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AKER BIOMARINE ANTARCTIC, AS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** 2:16-cv-02314 |
| **v.** | ) | |
| | ) | |
| **LUHUA BIOMARINE (SHANDONG) CO., LTD. and INFINITI MARKETING GROUP, INC. d/b/a INFINITI NUTRACEUTICALS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**EXPERT DECLARATION OF J. THOMAS BRENNA**

## I. SCOPE OF ASSIGNMENT

1. I have been retained by Aker BioMarine Manufacturing, LLC ("Aker") as an expert in connection with the above captioned matter to provide my opinions regarding certain claims of United States Patent No. 9,320,765 ("the '765 patent") (the "Asserted Patent"), and, specifically, whether Luhua BioMarine (Shandong) Co. LTD.'s ("Luhua") Luhua Krill Oil and Krill Oil Capsules ("Infringing Products"), infringe the aforementioned patent. As explained more fully below, it is my opinion that the Infringing Products do infringe the asserted patent.

## II. BACKGROUND QUALIFICATIONS

2. My current occupation is Professor of Human Nutrition and of Chemistry at Cornell University where I have served as a professor since 1989. My curriculum vitae is attached as Exhibit A.

3. My research couples Nutrition and Chemistry in a broadly interdisciplinary

program. I am a member of graduate fields in Cornell's four large colleges: Nutrition (CHE and CALS), Food Science and Technology (CALS); Chemistry and Chemical Biology (Arts); Geological Sciences (Engineering and CALS), and in a long-standing collaboration with a prominent former member of Cornell's College of Veterinary Medicine. My research group has been funded by institutes/centers at the NIH (NIGMS, NEI, NICHD, NCCIH) and has included at least one active R01 continuously since 1992. These grants have supported fundamental work in the nutrition of polyunsaturated fatty acids, and development of advanced mass spectrometry instrumentation and techniques.

4. I direct the work conducted in my laboratory in Savage Hall at Cornell University. Most of the work of the Brenna Lab is translational, tying basic research to biomedicine and human nutrition. Some studies are designed with particular, topical human health questions in mind, and these studies have occasionally had immediate implications. The most prominent examples of this work are animal studies to evaluate the efficacy, safety, and metabolism of food sources of polyunsaturated fatty acids. This work often employs stable isotope tracer techniques and molecular or isotope ratio mass spectrometry to probe metabolism. Other projects, particularly those that develop instrumentation and methods for mass spectrometry techniques, have a longer term payoff. They are sometimes undertaken for the challenge of making measurements that have never been possible previously, with an eye toward eventual applications. An example of this area is the development of a novel gas phase reaction for derivatization of polyunsaturated fatty acids for facile determination of double bond structure, which has found applications associated with safety of edible oils, including detection of trans fatty acids. More recent research is on nutrition of saturated branched chain fatty acids, a neglected class of dietary fatty acids. My more recent work involves development of methods for more precise and rapid

detection of endogenous performance enhancing drugs, particularly testosterone, as well as methods for detecting exogenous drugs.

5. I have served on numerous national and international advisory panels on human nutrition. I was a member of the 2015 Dietary Guidelines Advisory Committee appointed by the US Secretaries of Health and Human Services and of Agriculture. I am currently President of ISSFAL, the International Society for the Study of Fatty Acids and Lipids

## III. COMPENSATION

6. I am being compensated for my time at a rate of $600 an hour for my time spent on this matter. My compensation does not depend in any way on the opinions that I provide or on the outcome of the case. I have not been given a maximum amount of time to spend on this matter, nor have I imposed a maximum amount of time upon myself. Instead, I will spend as much time as I believe, in my professional capacity, is required to complete the scope of the assignment.

## IV. MATERIALS REVIEWED AND CONSIDERED

7. In forming my opinions set forth in this report, I have studied, among other things: the ‘765 patent; test reports; and articles as referenced herein.

## V. LEGAL STANDARDS

8. In rendering my opinions, I have utilized the following standards, which I understand are an accurate summary of relevant United States patent law. These legal standards were provided to me by counsel.

### A. Infringement

9. I understand that a patent holder has the exclusive right to make, use, import, sell, or offer for sale in the United States, any patented item. I also understand that if a party makes, uses, imports, sells or offers for sale a patented item without permission, they will be liable for patent infringement pursuant to 35 U.S.C. § 271. I understand that there are two steps to the patent infringement analysis. First, the meaning of the terms included in the patent claims must be interpreted. It is my understanding that the judge is responsible for construing the terms contained in the patent claims. Once the claims are construed, the fact finder (judge or jury) is responsible for determining if the accused item infringes the patent at issue. I also understand that, in order to find infringement, the fact finder must determine that every element of an asserted claim is present in the accused product.

### B. Person of Ordinary Skill

10. A person of ordinary skill in the art applicable to the patent-in-suit would hold a Bachelor’s degree in chemistry or closely related field, and two years’ experience in a laboratory specializing in lipid chemistry, lipid biochemistry, or related discipline.

11. In reaching my opinions below, I have kept in mind the instruction that my opinions should reflect not my own perspective as a professor, but rather, they should reflect my opinion on how a person having ordinary skill in the art at the time the patent application was filed would have understood the patent claims, patent specification, and the prosecution history.

## VI. <u>PATENT AT ISSUE</u>

12. The Asserted Patent generally relates to the field of dietary supplements, more specifically dietary supplements of omega-3 fatty acids and krill oil. Omega-3 fatty acids are popular dietary supplement recognized as key nutrients for development and maintenance of

neural tissue, reducing the risk of heart disease and the severity of and risk for diseases related to inflammation, among other indications. Krill oil contains omega-3 fatty acids in a form that many scientists and consumers consider superior to other forms such as triglyceride oils or fish oil concentrates. The patent concerns the composition of krill oil intended to deliver omega-3 fatty acids and astaxanthin, an antioxidant, in the form of a dietary supplement.

### A. United States Patent No. 9,320,765

13. The ‘765 patent is titled “Bioeffective Krill Oil Compositions”. The ‘765 patent was filed on September 6, 2013 and issued on April 26, 2016. The named inventors on the ‘765 patent are Inge Bruheim, Tilseth Bergen, and Mancinelli Orsta. The ‘765 patent discloses new krill oil compositions characterized by having high amounts of phospholipids, astaxanthin esters and/or omega-3 contents.

14. The ‘765 patent has 48 claims. I have been advised that the plaintiff has identified claims 1, 2, 7, 9, 18, 19, 25, 26, 31, 33, 34, 42, and 43 as asserted claims in this case. These claims and the relevant data are set out in the Claims Chart, attached hereto as Exhibit B.

## VII. STATEMENT AND BASES FOR MY OPINIONS

15. Having considered the Asserted Patent and the Infringing Products offered for sale by Luhua, it is my opinion that Luhua’s Krill Oil and Krill Oil Capsules infringe the ‘765 patent. The support for my opinion is set out in the Claims Chart, attached hereto as Exhibit B.

## VIII. LISTING OF PUBLICATIONS; LISTING OF OTHER EXPERT TESTIMONY WITHIN THE LAST 4 YEARS

16. Listings of my publications and expert testimony proffered within the last four years can be found in my curriculum vitae, attached hereto as Exhibit A.

## IX. SUPPLEMENTAL TESTIMONY

17. This report is a summary of my stated opinions and the bases of those opinions. I reserve the right to modify and update my opinion as I further review the above-referenced materials and other information, including additional materials produced during the discovery period in the litigation, and will consider other evidence with which I may be presented during this case.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge and recollection.

Executed this 3rd day of October, 2016, in Austin, Texas.



J. Thomas Brenna, PhD.