**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AKER BIOMARINE ANTARCTIC, AS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** 2:16-cv-02314 |
| **v.** | ) | |
| | ) | |
| **LUHUA BIOMARINE (SHANDONG) CO., LTD. and INFINITI MARKETING GROUP, INC. d/b/a INFINITI NUTRACEUTICALS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION OF TODD NORTON**

I, Todd Norton, am the General Manger of the United States Division of Aker BioMarine Antarctic AS ("Aker BioMarine"). I have knowledge of facts stated in this Declaration unless the context indicates otherwise.

1. Aker BioMarine Antarctic AS is a Norwegian corporation with its principal place of business at Oksenøyveien 10, P.O. Box 496. N-1327 Lysaker, Norway.

2. Aker BioMarine Manufacturing LLC ("Aker Manufacturing"), a subsidiary of Aker BioMarine, is a Delaware corporation with its principal place of business at 4494 Campbell Rd, Houston, TX 77041.

3. Aker BioMarine and Aker Manufacturing (collectively "Aker") work in concert to bring to market a patented krill oil, which contains a number of beneficial nutrients including: omega-3 fatty acids, ether phospholipids, and astaxanthin and other antioxidants. The patented products created by Aker are sold under the Superba™ brand, and include the Superba™,

Superba™2™, and Superba™Boost™ products (collectively, the "Superba Products") and are sold by Aker globally including throughout the United States.

4. Aker begins the krill oil production process in the Southern Ocean, near Antarctica. Aker BioMarine owns two fishing vessels: the "Saga Sea" and "Antarctic Sea". These fishing vessels catch live krill to be processed into krill oil.

5. After the catch is where Aker's innovation and many years of research and development set itself apart from the competition. One of the biggest issues facing krill oil manufacturers is the rapid degradation of the nutrients contained in the krill after it has been harvested. Aker developed a novel process for processing the krill aboard the vessel that significantly preserves the amount of nutrients available for processing into krill oil.

6. The aforementioned process and the krill oil created as a result of that process are protected by a number of patents owned by Aker BioMarine.

7. Once processed into krill meal on the fishing vessel, the krill meal is packaged and sent to Aker Manufacturing, which operates a processing plant in Houston, Texas. Aker Manufacturing has owned the plant since 2013, which currently employs 55 employees. Aker Manufacturing's Houston facility is the only plant used by Aker BioMarine for processing krill meal into krill oil.

8. Once Aker Manufacturing receives the krill meal from Aker BioMarine, Aker Manufacturing's Houston plant utilizes patented processes to convert the krill meal into the final krill oil products. The result of these patented processes is a patented krill oil that has higher levels of omega-3 fatty acids, ether and non-ether phospholipids, triglycerides, and astaxanthin than other krill oil products—thereby differentiating Aker's krill oil from that of any of its competitors who are not infringing Aker's patents.

9. Aker, moreover, has invested substantially in its intellectual property rights, including prosecution of the patent-in-suit, defense of corresponding foreign patents in foreign patent office proceedings, and assertion of the patent-in-suit in an International Trade Commission action against another competitor.

10. Over the last three years, Aker has expended a significant amount of time and expense customizing its manufacturing plant and refining its production processes. Aker has invested over $300 million dollars in its supply chain. In the United States alone, since 2013, Aker has invested tens of millions of dollars related to the manufacturing of its patented Superba Products.

11. Aker's investment in its processes, as well as in its intellectual property, has enabled Aker to provide krill oil with the patented levels of omega-3 fatty acids, ether and non-ether phospholipids, triglycerides, and astaxanthin, which are higher than other krill oil products lawfully on the market, with the exception of another competitor that Aker is currently litigating against in the ITC action.

12. Luhua BioMarine (Shandong) Co., LTD. ("Luhua"), a foreign manufacturer of krill oil, seeks to usurp Aker's success by violating Aker's intellectual property rights and selling infringing krill oil products. Luhua is believed to be a Chinese corporation that is owned, at least in part, by the Chinese government. Luhua manufactures krill oil for sale in both in bulk and capsule form.

13. Luhua has recently teamed up with Infiniti Marketing Group, Inc. d/b/a Infiniti Nutraceuticals, an American company based in Aliso Viejo, CA, to distribute its infringing krill oil products in the United States. *See* Exhibit A.

14. Aker has obtained samples of Luhua's krill oil products and had them tested at a third party laboratory, Spectral Services AG, which specializes in testing krill oil for the patented substances with the exception of astaxanthin, which was tested by Craft Laboratories. I understand that the results of the tests conducted at Spectral Services AG and Craft Laboratories show that the tested samples of Luhua's bulk and encapsulated krill oil products ("Infringing Products") infringe the patent-in-suit. Neither Luhua nor Infiniti have a license from Aker to practice Aker's patented technology. Despite not having a license, Luhua advertises its Infringing Products on its website and offers its products for sale in the United States, including in Las Vegas, Nevada. We also understand that Infiniti is marketing these same products in the United States. In doing so, Luhua and Infiniti market their infringing products to Aker's same target market.

15. Luhua's and Infiniti's infringement of Aker's patents irreparably harms Aker in a variety of ways. For example, Luhua and Infiniti are both scheduled to appear at the SupplySide West trade show in Las Vegas, Nevada during October 4, 2016 through October 8, 2016. A true and correct copy of the website for SupplySide West showing that Luhua and Infiniti are exhibitors is attached hereto as Exhibit B. SupplySide West is the biggest trade show for participants in the krill oil industry. At SupplySide West, upon information and belief, Luhua and Infiniti will attempt to sell their krill oil products to a number of corporate accounts, including current and prospective clients of Aker.

16. Luhua's and Infiniti's appearance at Supply Side West is damaging to Aker, which will also be in attendance at the trade show. During this event Luhua will undoubtedly offer the infringing krill oil products to members of Aker's target market, thus directly competing with Aker using Aker's own patented technology. Such offers would harm Aker's

reputation as the sole company with the ability to lawfully provide or license krill oil with the patented levels of nutrients—a reputation rightfully earned through Aker's innovations and protected by U.S. patent law. Luhua's infringing products, marketed to the exact same target market, will make it more difficult for Aker to convince potential customers to carry Aker's Superba products. Moreover, any krill oil customers obtained by Defendants at the SupplySide show will likely stick with Defendants for years, and it will be extremely difficult for Aker to identify and dislodge them once the relationships are solidified. Indeed, unless enjoined, Luhua will erode the competitive advantage Aker has worked so hard to develop. Luhua's actions will also interfere with customer relationships Aker has developed over the years, costing the company an incalculable amount of goodwill.

17. A permanent injunction and damages at the end of trial would be insufficient to compensate Aker for the market erosion, lost sales, loss of goodwill, and lost market share suffered by Aker if Luhua is not temporarily and preliminarily enjoined.

18. Enjoining Luhua and Infiniti will not, to my knowledge, have a negative impact of the public's health and welfare because Aker is able to meet the demands of the high-end krill oil market.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge and recollection.

Executed this 3rd day of October, 2016, in Elk Ridge, Utah, United States.

Todd Norton

Todd Norton